**Lisbeth L. GARRATT, Plaintiff–Appellant,**

v.

**John S. WALKER, d/b/a John S. Walker, DMD, Defendant–Appellee.**

**No. 96–1470.**

United States Court of Appeals, Tenth Circuit.

July 29, 1997.

Robert L. Liebross (Barry D. Roseman with him on the briefs), Denver, CO, for Plaintiff–Appellant.

Howard Bittman, Boulder, CO, for Defendant–Appellee.

Before PORFILIO, ANDERSON and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Plaintiff Lisbeth L. Garratt appeals the district court's grant of summary judgment to Defendant John S. Walker on claims proceeding under the Employee Retirement Income Security Act of 1974. Because the district court issued its judgment in response to cross-motions for summary judgment, our review is *de novo*. *Andersen v. Chrysler Corp.*, 99 F.3d 846, 855 (7th Cir.1996); *Trapper Mining Inc. v. Lujan*, 923 F.2d 774, 776–77 (10th Cir.), *cert. denied*, 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991). " 'Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to any material fact and that [a] moving party is entitled to judgment as a matter of law.' " *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (quoting *Wolf v. Prudential Ins. Co.*, 50 F.3d 793, 796 (10th Cir.1995)). We examine the record and reasonable inferences therefrom in the light most favorable to the party against whom the motion under consideration was made. *Andersen*, 99 F.3d at 856; *Cherokee Nation v. United States*, 782 F.2d 871, 873 (10th Cir.), *cert. denied*, 479 U.S. 811, 107 S.Ct. 59, 93 L.Ed.2d 18 (1986). Thus, in deciding whether to affirm the district court's grant of summary judgment to Dr. Walker we examine the evidence in the view most favorable to Ms. Garratt.

Dr. Walker is a self-employed orthodontist who commenced his practice in 1978. In 1984 Dr. Walker opened a "simplified employee pension" account, which is a form of individual retirement account or individual retirement annuity. 26 U.S.C. § 408(k)(1) (1994); Gary S. Lesser, Individual Retirement Account Answer Book, Special Supplement, SEPs and SARSEPs, at 1–1 (1996) ("Legally, a [simplified employee pension] is merely an individual retirement account or an individual retirement annuity (IRA) that also meets several additional rules.").

Because Dr. Walker's simplified employee pension is at the crux of this case, a brief explanation of such pensions is essential. Generally, a simplified employee pension (often referred to as a SEP, SEP–IRA, IRA–SEP, or simply IRA) is "a written arrangement or program (a plan) that allows an employer to contribute tax-deductible dollars toward an employee's retirement." Lesser, *supra*, at 1–1. Under a simplified employee pension plan the employer makes contributions to individual retirement accounts or individual retirement annuities (as defined in 26 U.S.C. § 408(a) and (b)) of employee participants. *LaChapelle v. Fechtor, Detwiler & Co.*, 901 F.Supp. 22, 24 n. 1 (D.Me.1995). Notably, if in a tax year the employer makes a contribution to any participating employee's pension account, the employer must do so for all participating employees in amounts of the same percentage relative to each employee's compensation.[1] *See* 26 U.S.C. § 408(k)(3). Under certain circumstances, employees may also make elective contributions out of their salary to the plan with pretax dollars. Lesser, *supra*, at 1–1; *see* 26 U.S.C. § 408(k)(6). A primary benefit of

---

1. In some instances the contribution percentage need not be equal, *see* 29 U.S.C. § 408(k)(3); however, apparently no such circumstances are present in the instant case.

such pension plans is to allow participants to defer state and federal taxation on the income placed into the pension account.

On or about January 1, 1991, Dr. Walker hired Ms. Garratt as a bookkeeper/receptionist. He initially paid her $8.00 per hour, but, as her responsibilities and tenure increased, he raised her salary so that by the end of 1993 she was earning $10.00 per hour. Concomitantly, her annual income increased from $15,936 in 1991 to $19,224 in 1992 and $22,901 in 1993.

In January 1994 Dr. Walker and Ms. Garratt discussed her compensation for that year. Dr. Walker wanted Ms. Garratt to go on salary, and Ms. Garratt requested a salary of $2,000 per month, which Dr. Walker found acceptable. Ms. Garratt then requested inclusion in Dr. Walker's simplified employee pension plan, which Dr. Walker replied he would have to think about. Thus, although Dr. Walker began paying her $2,000 per month, apparently his decision regarding her overall 1994 compensation was not final. In March Dr. Walker and Ms. Garratt again discussed her 1994 compensation, at which time he offered her either (a) a $21,000 annual salary plus a 15% contribution to her pension account or (b) a $24,000 annual salary with no pension contribution. Ms. Garratt insisted on a $24,000 salary with a 15% contribution, finding neither of Dr. Walker's offers acceptable. Because Ms. Garratt's requested compensation package was more than Dr. Walker was willing to pay for her services, he suggested that if his offers were unsatisfactory she look elsewhere for employment. Ms. Garratt then gave her notice, although in response to Dr. Walker's request she worked the next two weeks.

In addition to the parties' conflict over Ms. Garratt's 1994 compensation, there is also an issue regarding whether Dr. Walker's simplified employee pension plan contained a three-year service eligibility requirement, and thus whether Ms. Garratt became eligible to participate in the plan upon her hire in 1991, or not until 1994. Although Dr. Walk-

er was, and remains, unable to produce the simplified employee pension plan document he signed in 1984, he states in two affidavits that the pension plan contained a service eligibility requirement requiring employees to work for the employer for at least three of the prior five years to become eligible to participate in the pension plan. To support his claim, Dr. Walker attached to the second affidavit an internal memorandum of the brokerage firm with which he opened his pension account.[2] The memorandum, which states its subject to be "THE ABCs OF SEPs," sets forth "key features" of the firm's simplified employee pensions. One such feature is an eligibility requirement of employment during at least three of the past five calendar years. Dr. Walker also produced various collateral documents showing he had a simplified employee pension plan in place. These documents included an application to the brokerage firm to open a simplified employee pension and a "Customer's Agreement" with the firm. He signed the latter two documents on April 13, 1984.

In October 1993, Dr. Walker transferred his simplified employee pension account to a different brokerage firm. The simplified employee pension plan agreement Dr. Walker executed with the new brokerage firm clearly requires employment in three of the past five years. Dr. Walker asserts the eligibility requirement of that plan is identical to that of his earlier plan. However, in 1991 or 1992 Dr. Walker did offer participation in his pension plan to an employee who had only one year tenure, in an effort to induce her to reject another job offer. The employee declined Dr. Walker's offer and resigned to take the other job.

On appeal, Ms. Garratt argues two issues. First, she asserts Dr. Walker violated § 510 of the Employee Retirement Income Security Act, 29 U.S.C. § 1140 (1994), in refusing to pay her $24,000 plus a 15% pension contribution. Second, she contends Dr. Walker's plan did not, prior to 1993, contain a service eligibility requirement, and therefore she is

---

**2.** We note that although in his second affidavit, filed on January 31, 1996, Dr. Walker asserts the memorandum was provided to him when he opened his pension account, in his deposition testimony of October 3, 1995, he stated he did not recall receiving a copy of it. Apparently the copies in the record originate from one sent from the brokerage firm to Dr. Walker's counsel.

entitled to pension benefits for 1991, 1992 and 1993. We address these issues in the order presented.

 Before determining whether Dr. Walker violated § 510, we must first decide whether the Employee Retirement Income Security Act even applies to simplified employee pensions, a question no court of appeals has previously addressed.

The Employee Retirement Income Security Act applies only to "employee benefit plans." 29 U.S.C. § 1003(a) (1994). There are three kinds of such plans: employee welfare benefit plans, employee pension benefit plans, and plans that are both of the foregoing. 29 U.S.C. § 1002(3) (1994). Ms. Garratt argues simplified employee pensions are employee pension benefit plans, and thus within the coverage of the Act. An employee pension benefit plan is

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
>> (i) provides retirement income to employees, or
>> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond. . . .

29 U.S.C. § 1002(2)(A). Clearly, simplified employee pension plans fit within this definition because such plans are generally funded by employers to provide retirement income to employees and often result in the deferral of income for periods extending to the termination of covered employment or beyond. *See* 26 U.S.C. § 408(k); *LaChapelle,* 901 F.Supp. at 24 n. 1, 45 Fed.Reg. 24866, 24867 (1980).

Moreover, based on similar reasoning, the Department of Labor has concluded that "as a general matter, a [simplified employee pension plan], as described in section 408(k) of the [Internal Revenue] Code would be a 'pension plan' within the meaning of section 3(2) of the [Employee Retirement Income Securi-

ty] Act, [29 U.S.C. § 1002(2) ]." 45 Fed.Reg. at 24867. It has also promulgated two regulations presuming the applicability of the Act to such pensions. *See* 29 C.F.R. §§ 2520.104–4 and –49 (1996).

Dr. Walker argues that because simplified employee pensions are a form of individual retirement account or annuity, and because individual retirement accounts and annuities are generally excluded from the scope of the Act, the Act therefore does not govern simplified employee pensions. We disagree. Although 29 C.F.R. § 2510.3–2(d) (1996) does generally exclude individual retirement accounts or annuities from the coverage of the Act, it only excludes those individual retirement accounts or annuities described in § 408(a) or (b) of the Code. The Code details simplified employee pensions at § 408(k), rather than at (a) or (b).

Moreover, even § 408(a) or (b) individual retirement accounts or annuities are governed by the Act as "employee pension benefit plan[s]" if they receive employer contributions or if the employer is otherwise actively involved with the account or annuity. 29 C.F.R. § 2510.3–2(d). As simplified employee pensions are generally established by employers for the very purpose of contributing to employee individual retirement accounts or annuities, *LaChapelle,* 901 F.Supp. at 25 n. 3 (citing 26 U.S.C. § 408(k)(1)-(3)); 45 Fed.Reg. at 24867; Michael J. Canan, Qualified Retirement and other Employee Benefit Plans 246–47 (1997), clearly the regulation's exclusion of some individual retirement accounts from the Act's coverage does not extend to simplified employee pensions.

 Accordingly, based on our foregoing analysis and the deference we accord executive agencies interpreting statutes they administer, *see Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), we hold Dr. Walker's simplified employee pension is an employee benefit pension plan as defined in 29 U.S.C. § 1002(2) and therefore is governed by the Employee Retirement Income Security Act.[3]

---

**3.** We note the entirety of the Act may not apply to simplified employee pensions. Both 29 U.S.C.

§§ 1051(b) and 1081(a)(7) (1994) may exclude simplified employee pensions from the coverage

We now address whether Dr. Walker violated § 510 of the Act. That section, entitled "Interference with protected rights," provides in pertinent part:

It shall be unlawful for any person to discharge ... or discriminate against a participant ... for exercising any right to which he is entitled under the provisions of an employee benefit plan [or] this subchapter ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan [or] this subchapter.

29 U.S.C. § 1140. Ms. Garratt contends that by requiring her to choose an annual salary of $21,000, rather than $24,000, in order to receive a pension contribution, Dr. Walker discriminated against her with the purpose of interfering with her attainment of a right to which she may have become entitled, namely, a pension contribution. She also makes the kindred argument that by requiring her to accept a $21,000 salary in order to receive a pension contribution, Dr. Walker constructively discharged her, with the purpose of interfering with her attainment of a pension contribution. However, Ms. Garratt misapprehends the reach of § 510.

■ Congress intended § 510 to " 'prevent[ ] unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining ... pension rights.' " *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 237 (4th Cir.1991) (quoting *West v. Butler*, 621 F.2d 240, 245 (6th Cir.1980)). Because § 510 prohibits interference with rights to which an employee "may become entitled" under an employee benefit plan, its protection is not limited to vested rights, but also extends to rights the employee has not yet earned. *Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1411–13 (6th Cir.1996); *Heath v. Varity Corp.*, 71 F.3d 256, 258 (7th Cir.1995); *Seaman v. Arvida Realty Sales*, 985 F.2d 543, 546 (11th Cir.), *cert. denied*, 510 U.S. 916, 114 S.Ct. 308, 126 L.Ed.2d 255

(1993); *Conkwright*, 933 F.2d at 236–37; *cf. Inter–Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*, —— U.S. ——, —— – ——, 117 S.Ct. 1513, 1514–16, 137 L.Ed.2d 763 (1997) (§ 510's prohibition extends to interference with the attainment of rights that are incapable of "vesting" as that term is defined in the Act). Thus, for example, an employer who fires an employee a few months before the employee's pension rights would have vested may violate § 510. *See Shahid*, 76 F.3d at 1411. However, § 510's grasp is not unlimited. There is a point where an employee's possible attainment of a "right" is so speculative and contingent that it falls outside the bulwark of § 510.

■ That point has been reached here. Whether an employer contributes in a given year to its simplified employee pension plan is at its discretion. *See* 26 U.S.C. § 408(k)(3); Lesser, *supra*, at 1–6. Thus, at the time Dr. Walker informed Ms. Garratt of her compensation options and she chose to resign, whether Dr. Walker would make *any* pension contributions that year was completely and utterly at his discretion. *See* 26 U.S.C. § 408(k)(3); Lesser, *supra*, at 1–6. In such a case, where the "right to which [a] participant may become entitled" is thoroughly contingent on the employer's discretion and entirely within the employer's control, the "right" is too speculative for any alleged interference with its attainment to support a § 510 action. Admittedly, once an employer makes a simplified employee pension contribution, it must do so for each employee in a non-discriminatory fashion. 26 U.S.C. § 408(k)(3). Thus, if Dr. Walker had made a contribution to his pension account but failed to similarly treat Ms. Garratt, she likely would have had a valid cause of action under § 510. However, that is not this case.[4] Accordingly, Ms. Garratt's claims of discrimination and constructive discharge under § 510 must fail.

---

of portions of the Act. *See Barrowclough v. Kidder, Peabody, & Co.*, 752 F.2d 923, 929–930 (3d Cir.1985) (detailing the structure of the Act's coverage). However, no provision removes simplified employee pensions from the reach of § 510 of the Act, 29 U.S.C. § 1140, the statute Dr. Walker allegedly violated.

**4.** After Ms. Garratt left his employ Dr. Walker did make contributions to pension accounts for both himself and Ms. Garratt. His contribution for Ms. Garratt was an appropriate percentage of her 1994 compensation.

We now turn to the second issue Ms. Garratt raises: her contention Dr. Walker's simplified employee pension did not contain an eligibility service requirement prior to the fall of 1993. Concomitantly, she asserts that because Dr. Walker awarded himself pension contributions in 1991, 1992 and 1993, she too is entitled to pension contributions for those years. *See* 26 U.S.C. § 408(k)(3). In reviewing the district court's grant of summary judgment to Dr. Walker, "we examine the factual record and reasonable inferences therefrom in the light most favorable" to Ms. Garratt. *Kaul*, 83 F.3d at 1212; *Andersen*, 99 F.3d at 856. To avoid summary judgment, Ms. Garratt may not simply rest upon her pleadings; rather, she must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue [of material fact] for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(e)). "To be a 'genuine' factual dispute, there must be more than a mere scintilla of evidence.... [T]he evidence must be such that a reasonable jury could return a verdict for [Ms. Garratt].... Summary judgment may be granted if the evidence is merely colorable or is not significantly probative." *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir.1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250–51, 106 S.Ct. 2505, 2510, 2511–12, 91 L.Ed.2d 202 (1986)).

Ms. Garratt has failed to produce more than a "mere scintilla of evidence" in support of her claim Dr. Walker's simplified employee pension did not have a three-year service requirement prior to 1993. She points to a statement made by Dr. Walker during his deposition that he did not know what documents he filled out in connection with opening his pension account and his offer to another employee of pension participation after only one year of employment. However, Dr. Walker's statement he did not recall what documents he filled out is not an admission he did not elect a three-year service requirement at the inception of his pension plan, nor is it inconsistent with Dr. Walker's repeated sworn statements he did so elect. Further-

more, his offer of participation to another employee who had only one year of service is not significantly probative that his pension did not have a three-year service requirement, because he simply could have been willing to amend the plan to change the service requirement from three years to one year. *See Lockheed Corp. v. Spink*, —— U.S. ——, ——, 116 S.Ct. 1783, 1789, 135 L.Ed.2d 153 (1996) (discussing general freedom of employers to modify employee benefit plans); *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 1228, 131 L.Ed.2d 94 (1995) (same); Lesser, *supra*, at 2–22 (discussing amending simplified employee pension plans to increase service eligibility requirements). Indeed, the necessity of his having to offer participation in the pension indicates the employee was *not* then eligible, because if the plan had only a one-year service requirement, the employee's participation would have been automatic. *See* Canan, *supra*, 247 n. 5 ("If an employee meets the eligibility requirements, a contribution must be made on his or her behalf."). Thus, Ms. Garratt's proffered "evidence" is not sufficiently probative of her claim that a reasonable jury could find Dr. Walker's simplified employee plan did not have a three-year service eligibility requirement from its inception.

Ms. Garratt also argues that because Dr. Walker failed to produce a copy of his 1984 simplified employee pension plan, the Act's one-year service requirement maximum applies to the pre–1993 plan. Her reasoning is as follows. The Act bars pension plans from requiring more than one year of employment as a condition of plan participation, unless, *inter alia*, the plan is an "individual retirement account or annuity described in section 408 of title 26." 29 U.S.C. §§ 1051(6), 1052(a)(1)(A)(ii). Ms. Garratt admits the one-year maximum is inapplicable to qualified simplified employee pensions because the Code describes them in § 408. However, she notes § 408(k) requires all employer contributions to simplified employee pensions be made pursuant to "a definite written allocation formula which specifies ... the requirements which an employee must satisfy to share in an allocation." 26 U.S.C.

§ 408(k)(1), (5). Because Dr. Walker remains unable to produce a pre–1993 written plan stating the three-year service requirement, Ms. Garratt asserts Dr. Walker's pre–1993 plan did not comply with § 408's requirements for simplified employee pensions, and therefore is not exempt from the Act's one-year service requirement maximum.

The district court, based on Dr. Walker's affidavits and the 1984 signed application and customer's agreement, held the only possible inference it could draw from the evidence was Dr. Walker did have a written simplified employee pension plan in 1984, which plan included a written three-year service eligibility requirement. We agree. Dr. Walker's inability, thirteen years later, to produce the plan is not reason enough for a reasonable jury to find he did not have a written plan incorporating a three-year service requirement.

Accordingly, we find a reasonable jury could not find in Ms. Garratt's favor.

We **AFFIRM** the district court's grant of summary judgment on all issues.